## UNITED STATES v. BALANCE.

### No. 5509.

Court of Appeals of the District of Columbia.

Argued May 31, 1932.

Decided June 20, 1932.

Leo A. Rover, John W. Wood, C. L. Dawson, and W. C. Pickett, all of Washington, D. C., for the United States.

Warren E. Miller and Robert H. McNeill, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

GRONER, Associate Justice.

This is a war risk insurance case. 38 US CA § 421 et seq. Plaintiff obtained a verdict and judgment in the court below, and the government appeals. There are 39 assignments of error, 18 of which relate to the admission in evidence of War Department records and reports of physical examinations made by physicians and of hospitalization of plaintiff from time to time over a period of 12 or 13 years.

There are between five and six hundred war risk insurance cases pending and untried in the Supreme Court of the District. That court, in order to expedite trial of these cases,

some time ago appointed a commissioner with authority to settle issues upon proper pleadings, subject to review by the motions judge. In this case the commissioner so appointed made a summary of the facts shown in the War Department and Veterans' Bureau records. On the filing of the report, the parties stipulated as follows: "That the annexed summary of record evidence relating to plaintiff on file in the War Department and the U. S. Veterans' Bureau, prepared by the commissioner, is a correct summary of the records therein referred to, so far as material to the issue presented in the above entitled case, and that said summary may be received by the court and the jury in the trial of this case with the same force and effect as if the records summarized had been introduced in evidence."

Appellee (plaintiff) insists that by reason of this stipulation defendant (appellant) was precluded from objecting on any ground to the admissibility of the report or of any part of it. We think the stipulation does not have that effect. It authorizes the use by the plaintiff of the report in the place and stead of the original records; that is to say, it waives the necessity of the production of the official records or of verified copies, and agrees to give to the report precisely the same effect as could be claimed for the original, but does not waive objection to the competency of the records or any part of them. In other words, the stipulation did not go so far as to bind the government to an agreement that the report should be read in evidence on the trial of the cause. It was, therefore, subject to all objections which could properly be made to the admissibility of the original records, and the government retained the right to object to all or any part of it to the same extent as it might properly do if the records had been brought into court and offered in evidence. See State v. Leuhrsman, 123 Iowa, 476, 477, 99 N. W. 140; Robbins v. Spencer, 140 Ind. 483, 38 N. E. 522, 524, 40 N. E. 263.

At the trial of the case, the government did not object to the report in its entirety, but mainly objected to those portions containing personal statements of the plaintiff of his physical condition made from time to time to various physicians in connection with medical examinations of him, on the ground that these statements were self-serving, and also because when made there was an incentive to untruth or exaggeration because made in connection with a claim on his part for compensation under the several acts of Congress in relation to compensation and hospitalization for disabled veterans of the World War. The report of the commissioner covers 14 closely printed pages of the record, and contains an epitome of the data on file in the War Department and in the Veterans' Bureau from November 2, 1917, to April 1, 1930. That part covering the period from enlistment to discharge shows no record of disability or illness, except a 3 days' attack of influenza in 1918 and an acute attack of bronchitis in the same year, and this is not objected to. But a little more than a year and a half after discharge, that is to say, in February, 1921, the report shows that, on an application for hospitalization, plaintiff made the following statement: "Enlisted November 2, 1917. At Chateau Thierry, June, 1918, he acted as donor for transfusion of blood and contracted 'flu' and was in evacuation hospital No. 4 for five weeks, then returned to duty. Never felt real good after that." And also the following: "Coughs considerable and has severe coughing spells about three times weekly when he spits up blood and gets hoarse. Has lost twenty pounds in the past six months. Gets tired after working a couple of hours." A year later the following statement attributable to plaintiff appears: "Cough in morning and night. Losing voice gradually. Losing weight. Night sweats at times. Vomits occasionally. Appetite variable. Has spit blood in sputum in morning. Tires and gets out of breath shortly. Pains in chest." A little later: "Cough and expectoration; loss of weight; hoarse; pains in chest." And so on from year to year covering this 8 or 9 year period the report which the court allowed to be introduced in evidence contained 12 or 15 statements made by the plaintiff with relation to his impaired physical condition prior or to and at these various times. Objection was properly made before trial to the admissibility of these statements, and it would have been a simple matter to have deleted from the report all these self-serving declarations, and the failure to do so and the admission of the entire report in evidence was, we think, error of such prejudicial character as makes it our duty to reverse the judgment and send the case back for a new trial.

The report, so far as it contained an abstract of the observations and opinions of the medical officers, verified by their signatures, was admissible. Nor do we think the fact that these examinations were made on application for compensation affects admissibility. They were all made by physicians employed by the government, and were a

part of the official records of a department of the government. They were made in the performance of official duty, and were presumably correct, and in the circumstances we think it would be unreasonable to require plaintiff in a war risk insurance case always to summon the government doctors personally, for that frequently would be impossible, or at least abortive. The Bureau is vested with authority to examine claimants under the Veterans' Act, and the records made are public records which section 30 of the Veterans' Act (38 USCA § 456) provides may be examined by a claimant under that act. There was, therefore, no error in admitting the official reports of the physicians based on their examinations of plaintiff, but this is very far from saying that self-serving declarations found in reports of the Bureau's physicians are likewise admissible in evidence.

The courts have gone very far in liberalizing the rules in favor of claimants under war relief acts, and this policy has in large measure grown out of the benevolent relation which the government occupies to its veterans. The underlying purpose of the act and its amendments is to afford protection and relief to those who served in the military and naval service. The legislation is remedial and should be liberally construed, but, after all, the right to recover under a war risk insurance policy is subject to the ordinary rules of evidence obtaining between parties to a contract, and to entirely ignore the "hearsay" rule would be to open the door to fraud and in many cases to make the government the victim rather than the guardian. In the case under consideration, the statements made by plaintiff, especially the early statement relating to his physical condition while still serving in the Army and before the lapse of the policy, were the connecting link through which he sought to establish his total disability as of the time of discharge. The statement was therefore vital, and it is no answer to say that plaintiff himself when he took the witness stand testified to the same facts. Third National Bank v. United States (C. C. A.) 53 F.(2d) 599, 601. Whatever may be the merits of the case under consideration, we deem it our duty to correct the record so that in the trial of this and of other similar cases in the future the error, which here we think was prejudicial, may be avoided.

Reversed and remanded for a new trial in accordance with this opinion.

Reversed and remanded.