## MISSOURI, KANSAS & TEXAS RAILWAY COMPANY ET AL. v. C. D. PERRY.

### No. 439.

1. **Excessive Verdict—Remittitur in Trial Court.**—There is no statutory authority in our trial courts to receive a remittitur to cure the error of excessiveness in a verdict where the excess is not ascertainable by any rules of law or certain fixed methods of calculation, and the decisions of our Supreme Court have condemned the practice as erroneous. In this case the verdict was for damages for personal injuries, and the remittitur was entered pending motion for new trial, and in response to the expressed views of the trial judge to the effect that the verdict was excessive.

2. **Passenger Asleep—Notice of Destination.**—It is ordinarily the duty of the passenger to use his senses and take notice of the usual announcement of stations; and if by reason of being asleep, unknown to the carrier, he fails to hear the notice given of the arrival of the train at his destination, and remains on the train and is carried beyond, the fault is his, and the carrier is not liable therefor.

3. **Same—Alighting from Moving Train.**—If by his own fault and negligence the passenger is carried beyond his place of destination, and he attempts to get off the

train while it is in motion without being compelled to do so by the carrier, he assumes the risk of such act, and can not recover for consequent injuries.

4. **Advice of Brakeman or Porter—Scope of Employment.**—Liability is imposed upon the carrier for only such acts of the servant or employe as are within the scope of his employment; and the advice of a porter or brakeman to such person, that it would not be dangerous to get off of a moving train, can not be considered as the discharge of a·delegated duty.

APPEAL from Rains. Tried below before Hon. E. W. TERHUNE.

*Dillard & Muse,* for appellants.—1. When a passenger is asleep when his point of destination is reached, and he fails to leave the train until the train is in motion, then he can not recover from the railway unless the employes in charge of the train compel him to leave it.

2. If any employe inform a passenger in such condition that he thinks he can safely alight, and the passenger attempts to alight, and in so doing is injured, no liability is fixed upon the railroad for such injuries. Railway v. James, 82 Texas, 306.

3. When a verdict is excessive in amount the court should set it aside.

4. If a verdict in a case for personal injuries is excessive, a remittitur will not cure the vice in the verdict.

5. If the trial judge was of the opinion that the verdict was excessive he should have granted a new trial. The damages are assessed by the jury; if the verdict is excessive, the judge, in actions like this, has no measure by which to determine how much it is excessive; his attempt to do so is an invasion of the rights of the jury. Thomas v. Womack, 13 Texas, 584; Railway v. Coon, 69 Texas, 730; Nunnally v. Taliaferro, 82 Texas, 289.

*Yoakum & Looney,* for appellee.—1. If plaintiff was a passenger on defendant's train, bound for Emory, and was asleep when the train reached such point, and even though the station was duly announced and a reasonable time given for passengers to alight, if after starting the passenger was aroused and told by the porter that he could alight with safety, and told plaintiff on which side to alight, and plaintiff in obedience to such invitation, and acting with ordinary care and prudence, stepped from the cars and fell and was injured, as alleged, caused either from the speed of the train, the want of proper lights, or the improper place at which plaintiff was invited to alight, or from any two or a combination of all said causes, then the defendant would be liable. 59 Texas, 406; 62 Texas, 356; Thomp. on Carr. of Pass., 227; Eddy v. Wallace, part 8 U. S. C. C. Rep., 265; 2 Wood's Ry. Law, p. 1129, note 2; also pp. 1130–1137.

2. The verdict for $9000, under the facts in this case, is not excessive; and not being so, then there was no error in the trial court permitting the remittitur for $4500, as plaintiff had the right to remit any part of his judgment, and the assumption of appellant that the trial

judge thought the verdict excessive is immaterial. The question for decision now is, whether or not this court deems the verdict excessive, and this will be determined from the evidence, and not from the supposed, yet unannounced, views of the district judge.

FINLEY, ASSOCIATE JUSTICE.—Appellee purchased a ticket over appellant's road from Lone Oak, in Hunt County, to Emory, in Rains County, and took passage on the train. When the train reached Emory, which was in the night-time, the name of the station was announced in the usual manner, and the train was stopped a sufficient length of time for passengers to get off and on the cars. The facts as far as stated are unquestioned. Appellee's evidence tends to show that he was asleep, and did not hear the announcement of the station; that just after the train started a negro man dressed in train uniform, with lantern in hand, came through the car and aroused appellee, and told him that they were at Emory; that appellee followed him to the platform, and was told by the trainman that the train had just started, and that he did not think there was any danger in his getting off. Appellee, acting on this advice, attempted to get off, and was seriously injured. Just how the injury was inflicted does not appear; it does appear that he fell, and the car wheel ran over his arm, cutting it off. On the trial of the cause the jury returned a verdict for $9000. Forty-five hundred dollars was remitted by appellee in the court below, pending the consideration of the motion for new trial, and judgment final was entered for $4500, from which this appeal was taken.

Appellants excepted to the action of the court in permitting and approving the filing of the remittitur. In approving the bill of exceptions, the judge makes this explanation: "I did not suggest to counsel that a remittitur should be filed, and did not say that I would overrule the motion if a remittitur was filed. I was explaining by calculation that plaintiff's * * * capacity to earn was lessened, so that estimating his period of expectancy at eighteen years his damages in that regard would be from $2750 to $3600. I then proceeded, and was intimating what would be a fair compensation for his mental and physical suffering, the tenor of my remarks indicating that I regarded a verdict for over $5000 excessive; and plaintiff's counsel voluntarily, and without suggestion from me, filed a remittitur, remitting half of the verdict. I had not ruled on the motion, and had not said how I would rule, but it was apparent to counsel that I regarded the verdict as excessive."

It is quite clear to our minds that the trial judge regarded the verdict for $9000 as excessive, and so regarding the verdict, he would have doubtless done his duty and granted a new trial but for the entering of the remittitur. It is equally clear that appellee's counsel understood the views of the judge as to the verdict, and filed a remittitur to meet the difficulty, cure the error, and obtain favorable action on the motion for new trial. There is no statutory authority in our trial

courts to receive a remittitur to cure the error of excessiveness in a verdict where the excess is not ascertainable by any rules of law or certain fixed methods of calculation, and the decisions of our Supreme Court have condemned the practice as erroneous. Thomas v. Womack, 13 Texas, 580; Railway v. Coon, 69 Texas, 730; Nunnally v. Taliaferro, 82 Texas, 289; Railway v. Wilkes, 68 Texas, 617.

Had the remittitur not been in response to the views of the trial judge that the verdict was excessive, but purely voluntary on the part of appellee, an entirely different question would be presented for our consideration. It is fairly manifest from the language of the trial judge, qualifying the bill of exceptions, that he let counsel for appellee understand that he considered the verdict excessive. He might as well, as far as effect be concerned, have told counsel that he considered the motion for a new trial based upon excessiveness of the verdict as well grounded, and then received the remittitur as curing the error. If the views of the trial court as to excessive verdict had not been made to appear, then the question of the excessiveness of the verdict as originally rendered would be addressed to this court. As the matter is presented to us, that question is not involved, and we express no opinion upon it.

It is urged by appellants, that when a passenger is asleep and fails to get off the train at the place of destination, the station having been announced, and the train stopped a reasonably sufficient time for the purpose, that he can not recover for injuries received in getting off the train while in motion, unless he was forced to do so by the carrier. This point is raised in objections to the main charge, refusal of special charges, and overruling the motion for new trial. It is not necessary that we should consider these assignments separately; but we will sufficiently indicate our views upon the question to guide the trial court upon another trial.

Under the contract of carriage the law implies certain obligations resting upon the carrier, and certain reciprocal duties devolving upon the passenger. The carrier undertakes to transport the passenger safely from the initial point of transportation to the place of destination; to give reasonably sufficient notice of stations, and to afford a reasonable opportunity for the passenger to disembark from the train. When the carrier has performed these obligations, its duties and responsibilities under the contract of carriage cease; and it does not thereafter sustain any contractual relation to the person it has carried. The reciprocal duty rests upon the passenger to get off the train at the place to which he has contracted for carriage, when reasonable notice has been given and reasonably safe means and opportunity afforded him for the purpose. The obligation does not rest upon the carrier to put the passenger off of the train; nor does the law impose upon the carrier the duty of taking notice that the passenger has fallen asleep, and cause him to be aroused. It is ordinarily the duty of the passenger to use his senses, and take notice of the usual an-

nouncement of stations; and if by reason of being asleep, unknown to the carrier, he fails to hear the notice given of the arrival of the train at his place of destination, and remains on the train and is carried beyond, the fault is his, and the carrier is not liable therefor. The carrier no longer owes him any contract duty—the relations of the parties have changed, and the grounds of liability become different. If by his own fault and negligence the passenger is carried beyond his place of destination, and he attempts to get off the train while it is in motion, without being compelled to do so by the carrier, he assumes the risk of such act, and can not recover for consequent injuries. The contract of carriage having terminated, and the person being upon the train through his own fault, the company could become liable only through failure of its servants to exercise ordinary care against inflicting injury upon him. The advice of a porter or brakeman to such person, that it would not be dangerous to get off of a moving train, can not be considered as the discharge of a delegated duty, for no such obligation rested upon the carrier. Liability is imposed upon the carrier for only such acts of the servant or employe as are within the scope of his employment, and which for that reason are treated as the acts of the master. Railway v. James, 82 Texas, 306; Conwill v. Railway, 85 Texas, 96.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 27, 1894.